[No. 38838. En Banc. May 8, 1969.]

EILEEN M. SAMUELSON, *Appellant*, v. GEORGE FREEMAN *et al.*,
*Respondents.**

*Schroeter, Talbot & Smith,* for appellant.

*Williams, Lanza, Kastner & Gibbs,* by *Henry E. Kastner,*
for respondents.

HALE, J.—An intrinsic quality of imprecision found in
the statute of limitations as it affects allegations of medical

*Reported in 454 P.2d 406.

malpractice has emerged since our opinion in *Ruth v. Dight, ante* p. 660, 453 P.2d 631 (1969), overruling *Lindquist v. Mullen,* 45 Wn.2d 675, 277 P.2d 724 (1954). This appeal is not likely to make the statute seem more precise.

Eileen Samuelson was injured in an automobile accident Septemeber 17, 1960, and taken immediately to Ballard Hospital in Seattle. Her family physician, Dr. Charles Day, reached the hospital shortly thereafter and, among other injuries, found a fracture of the right femur. He called in Dr. George Freeman as an orthopedic specialist to take charge of the case. Dr. Freeman confirmed Dr. Day's findings, diagnosed the injury as a subtrochanteric spiral fracture and assumed control of the treatment. Next day, September 18, 1960, he performed an open reduction of the break. After attaching metal plate and screws for fixation, he applied a plaster cast to immobilize the thigh and leg.

About 3 years and 7 months after the operation, plaintiff, April 1, 1964, brought this action against Dr. Freeman and his community alleging, at the outset—not negligence in the performance of the surgery, but—negligence during the 3-year period next preceding the commencement of the action in the examination, diagnosis, treatment and care, including negligent failure to diagnose and properly treat a bone infection. Defendants entered a general denial and pleaded the statute of limitations and contributory negligence as affirmative defenses.

Although initially asking damages in her complaint only for negligence occurring after April 1, 1961, plaintiff during trial sought a trial amendment to include negligence in performing the surgery of September 18, 1960, alleging in the proposed amendment that the doctor negligently used screws and plate of different metals which produced an electrolysis in the wound and caused a *continuing injury* during postoperative treatment. The learned trial judge denied the amendment and applied the 3-year statute of limitations in accordance with *Lindquist v. Mullen, supra,* and instructed the jury that plaintiff could not recover for any negligence occurring before April 1, 1961.

From a judgment of dismissal entered on a verdict for the defendants and the order denying a new trial, the plaintiff appeals, specifying 31 assignments of error. We will discuss two points, the first relating to the mutiplicity of instructions dealing with standards of care required of medical practitioners, and the second involving the statute of limitations in complaints alleging medical malpractice.

As to the first point, we are of the opinion that the jury was overinstructed on the subject of the standards of care and skill required of medical practitioners. Instructions 5, 6, 8, 9, 10 and 11 all in one way or another told the jury that a physician is held to and must apply an average of the skill ordinarily possessed by similar physicians; he is not required to possess the highest degree of skill, but must apply his average skill and learning with reasonable care; he is liable for failure to properly exercise that skill and is negligent if he fails to inform himself of his patient's condition, but if, having properly informed himself, he reaches a wrong conclusion, he is not liable for errors in judgment; a physician is not liable for malpractice in choosing one of two or more methods of treatment if his choice was based on honest judgment and was one of several of the recognized methods of treatment; a physician does not insure or guarantee a satisfactory result; lack of success in the treatment is in itself no evidence that the doctor failed to possess or exercise reasonable skill; a doctor should not be liable for an honest mistake in judgment if there was reasonable doubt as to the nature of the physical condition involved or reasonable doubt as to what should have been done according to the current standard of practice in the community; and, finally, that the defendant doctor should not be judged by after-acquired knowledge but only by circumstances then known to him or which should have been known in the exercise of ordinary skill.

The six instructions considered seriatum—even if singly correct—did in totality overemphasize the limitations upon the physician's liability. When considered as a whole—and instructions must be taken as a whole—they

became argumentative in character and in sum overemphasized the physician's immunities and markedly diminished his responsibilities.

When the instructions as a whole so repetitiously cover a point of law or the application of a rule as to grossly overweigh their total effect on one side and thereby generate an extreme emphasis in favor of one party to the explicit detriment of the other party, it is, we think, error— even though each instruction considered separately might be essentially correct. Thus, if the instructions on a given point or proposition are so repetitious and overlapping as to make them emphatically favorable to one party, the other party has been deprived of a fair trial. We are, of course, not alluding to those minor redundancies or even casual repetitions which may inadvertently or unavoidably develop among the instructions, but refer rather to the extreme case where they overlap and are repetitive to such a degree that a court of review must find them palpably unfair.

This overweighing of the instructions is not likely to recur in the instant case because of the recent publication in this state of Washington Pattern Jury Instructions, 6 Wash. Prac. 105.00 and 105.01, which set forth possible instructions concerning standards of medical practice and seem to do so with fairness and reasonable brevity. Complementing these pattern instructions, and not to be overlooked, is the rule of this jurisdiction as stated in *Pederson v. Dumouchel*, 72 Wn.2d 73, 431 P.2d 973 (1967): A qualified medical practitioner is required to exercise (at 79)

that degree of care and skill which is expected of the average practitioner in the class to which he belongs, acting in the same or similar circumstances. This standard of care is that established in an area coextensive with the medical and professional means available in those centers that are readily accessible for appropriate treatment of the patient.

The next question is to determine when, under the statute of limitations, the instant cause of action accrued. Confronted at the outset by an affirmative defense which would

limit an action for medical malpractice to within 3 years "after the cause of action shall have accrued," RCW 4.16.010,[1] 4.16.080(2), plaintiff, as earlier noted, initially sought recovery for negligence occurring in the course of treatment and not from the initial surgery September 18, 1960. She alleged negligence in the course of treatment during the 3 years next preceding the commencement of the action, *i.e.*, for negligence after April 1, 1961. She thus cast her complaint to accommodate the rule extant, for it had been the undeviating policy in this jurisdiction that "in malpractice cases . . . the cause of action accrues at the time of the wrongful act that caused the injury." *Lindquist v. Mullen,* 45 Wn.2d 675, 277 P.2d 724 (1954).

Recently, however, this court has reexamined the statute of limitations as it applies to medical malpractice cases which involve the leaving of foreign articles and substances in surgical wounds, and overruled *Lindquist* in *Ruth v. Dight, ante* p. 660, 453 P.2d 631 (1969). The latter decision was filed after the instant case had been tried and argued on appeal. Thus, *Lindquist* was clearly the declared law of this jurisdiction at the commencement and throughout the trial of the instant case. But the record shows too that, although plaintiff acknowledged it as the law, she, nevertheless, vigorously argued for an overruling of *Lindquist* in her appeal.

Defendant contends, however, that even if *Lindquist* were overruled, plaintiff pleaded and tried her case on a theory compatible with the then existing law in this state, and she cannot now change theories on appeal. The record does show several instances in the instructions, exceptions thereto and objections to the evidence where plaintiff acknowledged her recovery would be limited to negligence

---

[1] RCW 4.16.010:

"Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute; but the objection that the action was not commenced within the time limited can only be taken by answer or demurrer."

not during initial surgery but occurring only within 3 years of the commencement of the action. For example, she did not except to the statement of the case instruction in which the court said that plaintiff claims the defendant "on April 5, 1961, and thereafter, negligently diagnosed and treated her for a fractured femur and complications thereof, thereby aggravating her condition and delaying her recovery." Defendant urges that this and other unexcepted to instructions declared the law of the case, and recovery could be based only on acts occurring within 3 years of the commencement of the action.

 Instructions generally are considered sufficient if they are supported by substantial evidence and allow a party to argue sensibly his theories of the case. *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964); *Smith v. McDaniel*, 53 Wn.2d 604, 335 P.2d 582 (1959); *DeKoning v. Williams*, 47 Wn.2d 139, 286 P.2d 694 (1955). Wiehl, *Instructing a Jury in Washington*, 36 Wash. L. Rev. 378 (1961). Thus, under the evidence and charge to the jury, plaintiff could sensibly argue her theory of the case only on the basis of the remedies available to her under the Lindquist rule. Generally, a failure to except to the instructions, or a failure to adequately apprise the trial judge of tenable points of law or fact on which the exceptions rest, leaves those instructions as the law of the case. *Lunz v. Neuman*, 48 Wn.2d 26, 290 P.2d 697 (1955); *McGovern v. Greyhound Corp.*, 53 Wn.2d 773, 337 P.2d 290 (1959); *Roumel v. Fude*, 62 Wn.2d 397, 383 P.2d 283 (1963). For a discussion of the law of the case doctrine, *see Greene v. Rothschild*, 68 Wn.2d 1, 402 P.2d 356, 414 P.2d 1013 (1965-66). But at the time exceptions were taken and the case argued, *Lindquist* was clearly the controlling precedent and there was no other authority available to plaintiff upon which to take exceptions or offer instructions on theories outside its controlling principles.

The record indicates plaintiff initiated and tried her case on the basis that *Lindquist* declared the law of this jurisdiction; it shows too she vigorously sought to have the

Lindquist rule abrogated. However, under the trial court's rulings, she could not escape the implications of the Lindquist precedent without abandoning her cause to a substantial degree either in presenting evidence or offering or excepting to the instructions.

Where the law is laid down clearly, cogently and convincingly by the highest tribunal in the state that a cause of action for medical malpractice accrues at the time the injury occurs, the court and the parties are bound by those explicitly declared principles until they have been authoritatively overruled. In our judgment, it would be unfair and unjust to hold that plaintiff's acceptance of *Lindquist* as a controlling precedent constituted a waiver on her part or estopped her from adapting her cause to such rule as might be declared if *Lindquist* were overruled. Cf. *Fidelity & Cas. Co. v. Halibut Producers Cooperative*, 73 Wn.2d 153, 437 P.2d 182 (1968).

■ The record shows beyond doubt that Dr. Freeman performed surgery on or about September 18, 1960, to reduce and treat plaintiff's fracture of the femur, and that he continued to observe and treat that particular condition until some time in April, 1963. Plaintiff charged the defendant with continuing negligence from the time of the surgery, but because of the existing interpretation of the 3-year statute of limitations governing malpractice cases, damages were limited to acts and omissions occurring within the 3 years preceding the commencement of the action. In construing the statute of limitations concerning medical malpractice, we think it a sound rule that, if malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, the statute does not begin to run until the treatment for that particular illness or condition has been terminated. *Hotelling v. Walther*, 169 Ore. 559, 130 P.2d 944, 144 A.L.R. 205 (1942). *See* Annot., 80 A.L.R. 2d 368 (1961).

The continuing-course-of-treatment rule makes a sensible corollary to the rule that the statute of limitations ordinarily begins to run either from the occurrence of the negligent act or omission, if the injuries therefrom are manifest,

or if not apparent, then from the time that the patient discovered the injury, or earlier, if in the exercise of ordinary concern for his own health and welfare and in the exercise of reasonable diligence he should have discovered the injury. In declaring these principles, we are, of course, departing from the Lindquist rule and also that part of *McCoy v. Stevens,* 182 Wash. 55, 44 P.2d 797 (1935), which rejected the continuing-course-of-treatment concept.

Accordingly, the cause will be reversed and remanded for a new trial with leave to the parties to prosecute the complaint and wage their defenses in conformity with this opinion, and with leave to all parties to amend their respective pleadings.

ALL CONCUR.