[No. 56-40540-3.    Division Three.    March 11, 1970.]

C. C. Chase et al., *Appellants*, v. Andrew Hinen et al.,
*Respondents*.

*Robert A. Milne (of Milne & Peterson)*, for appellants.

*Paul A. Klasen, Jr.*, for respondents.

Munson, J.—C. C. Chase and his wife Mildred, appellants, sought to recover $2,363.16 from Andrew Hinen, his wife, and his son, respondents. Respondents counterclaimed for $6,527.25 alleging appellants: (1) misrepresented the absence of the weed nightshade; and (2) injuriously interfered with the irrigation of respondents' corn crop. The jury found for respondents on both the orginal complaint and their counterclaim. The trial court granted appellants' motion for new trial, subject to respondents' acceptance of a $1,085 reduction from the jury award of $6,527.25. Respondents accepted the reduction but the Chases appealed.

In early 1966, Hinen and Chase, both experienced farmers in the Columbia Basin, began discussions concerning

land units to be leased by respondents and the type of crops contemplated to be grown. During these discussions, Hinen testified he questioned Chase concerning the possibility of raising a bean crop and that he particularly inquired of Chase about the presence of nightshade.[1] Hinen said Chase told him there was no nightshade present on certain fields within unit 51. Chase testified he knew of the weed's presence and so informed Hinen.

In March 1966, appellants leased to respondent 2 parcels of land, i.e., unit 51 block 89 and unit 145 block 71, within the Columbia Basin Project. The rental per parcel was $1,800, one-half payable at the execution of the lease and the balance on December 1, 1966. In addition to the lease, respondents agreed to pay appellants for fertilizer which had been previously placed on a field in unit 51, as well as pay the cost of power for irrigating unit 145. While respondents contemplated planting the entire area in corn, they were unable to obtain satisfactory contracts and consequently planted beans in part of the area previously represented to be free of nightshade. Respondents had no way of determining if nightshade was present until it germinated in June, approximately 2 months after the crop was planted. In June the presence of nightshade was definitely ascertainable; all attempts by respondents to control it were unsuccessful and the bean crop, because of the heavy infestation of nightshade, was unable to be harvested. The evidence supports a loss to respondents on the bean crop, after deducting production and attempted harvesting costs, of approximately $9,000.

The lease also provided respondents were to furnish water to appellants' homesite garden and orchard. However, appellants, without notifying respondents, would take water for this purpose at such times and in such quantities that the respondents' siphon tubes went dry. This interrupted respondents' irrigation cycle and consequently diminished the quantity of their corn crop. The evidence estab-

---

[1]Nightshade is a weed particularly impeding to the harvesting of beans.

lishes approximately $1,800 net damage for the corn crop.

Respondents refused to pay the last half of the rental payments and the bills for fertilizer and power. Appellants brought suit and respondents counterclaimed.

■ Appellants assign error to the trial court's failure to grant their motion for a directed verdict in the amount of the past-due rent, and the power and fertilizer bills, totaling $2,363.16. The trial court, on motion for new trial, recognizing in part the merit of appellants' contention granted the motion conditioned upon respondents' agreement to accept a reduction in the verdict of $1,085, *i.e.*, the rental due upon unit 145, where no beans were planted, and its attendant power bill. Appellants contend that they are entitled to: (1) all of their rent, less $100 they obtained from renting a hunting cabin on the leased property during the lease-hold period, (2) the power bill in the amount of $285, and (3) the fertilizer bill in the amount of $278.16, instead of the $1,085 granted by the trial court. This position is well taken. By continuing in possession and bringing an action for damages after discovering fraud, respondents elected to affirm the lease, waived their right to rescission and thereby became liable for the total amount of rent due and the accompanying power and fertilizer costs. *Salter v. Heiser*, 39 Wn.2d 826, 239 P.2d 327 (1951). Appellants are entitled to judgment in the amount of $2,263.16. However, this amount is an item to be considered in computing damages, if any, due under the counterclaim.

Appellants also challenge the court's giving of an instruction defining fraud in its nine elements, claiming there was no evidence to support four of the necessary elements: (1) a representation; (2) of an existing fact; (3) respondents' reliance on the truth of the representation; and (4) their right to rely thereon.

Although the evidence is in conflict, there is substantial evidence upon which a trial judge could properly submit the question of misrepresentation to the jury, *Pletcher v. Porter*, 177 Wash. 560, 566, 33 P.2d 109 (1934), *Bland v. Mentor*, 63 Wn.2d 150, 155, 385 P.2d 727 (1963), and from

which a trier of fact could properly find: (1) appellants represented to respondents a certain parcel of land would produce a bean crop and positively or inferentially a representation was made by appellants that there was no nightshade present; (2) the seeds of the weed were lying below the surface at the time of the representation (awaiting the coming of spring to germinate), thus their presence was an existing fact; (3) respondents relied upon appellants' representation since they did plant a bean crop on the parcels supposedly free of nightshade; and (4) respondents had the right to rely on appellants' statement since there was no testimony in the record that every parcel of land within the Columbia Basin Project was infested with nightshade or that its presence at the time of the representation and planting was ascertainable.

■ As an alternative theory, the trial court gave an instruction setting forth the elements of fraud by concealment of a latent defect. Appellants assign error to this instruction on the basis there is no evidence to support a finding that nightshade is dangerous to property or amounts to a concealed defect in the land. Appellants' contention too narrowly defines the term "concealed defect." From the context in which the representation was made, a trier of fact could find there was, within the leased land, a concealed defect, i.e., nightshade, which was dangerous to the use of the land in growing a bean crop. *Davis v. East Contra Costa Irr. Dist.,* 19 Cal. 2d 140, 119 P.2d 727, 728 (1941); W. Prosser, The Law of Torts § 101 at 712 (3d ed. 1964).

■ Appellants' last assignment of error pertains to the giving of the following instruction on damages:

The proper measure of damages for loss of crops is the value of crops at the time of loss, which value may be estimated by evidence showing reasonable value of crops upon land at time of loss or market value at time of maturity, less cost of tilling, harvesting and marketing.

Appellants contend under *Salter v. Heiser, supra,* the court should have given its proposed instruction encompassing

the benefit of bargain rule. Our Supreme Court, in *Salter*, stated at page 834:

> Where the plaintiff can be awarded the difference between the value of what he would have received had the representations been true and the actual value of what he received, he is adequately compensated. While it is unquestionably true that the fraud may result in a loss in operating a business, where, had the state of things been as represented, it would have returned a profit, that element of damages is reflected in the difference in values computed under the "benefit of bargain" measure of damages. Further, such a rule removes the speculation attendant in attempting to ascertain what portion of loss is attributable to the fraud and what portion is attributable to bad management or other factors not connected with the fraud.

In the instant case, there is no difference in the dollar result under either the measure of damages the court instructed upon, *i.e.*, loss of crops, or that requested by appellants, *i.e.*, benefit of bargain. Both would have required evidence of the crops' value, less the cost of production. The instruction given by the trial court probably was better understood by the jury inasmuch as respondents are claiming damages for their crop loss because of appellants' misrepresentation. By so instructing, the court did not err. *Samuelson v. Freeman*, 75 Wn.2d 894, 899, 454 P.2d 406 (1969).

Respondents, by their pleadings and in argument before this court, state they seek only recovery of their actual farming expenses, *i.e.*, out-of-pocket expenses. This is not the proper measure of damages. The trial court, however, did not instruct on respondents' theory of damages; nor have respondents assigned error in failing to instruct upon their theory; furthermore, the amount of respondents' damages proved exceeds that of their prayer. The foregoing taken collectively, adequately establish that appellants are not prejudiced thereby. Inasmuch as respondents did not seek amendment of their prayer to conform to the evidence at any time, they are limited to the amount of their prayer.

The trial court's order granting a new trial is reversed.

The cause is remanded to the trial court with instructions to enter judgment in favor of appellants in the amount of $2,263.16. The judgment in favor of respondents in the amount of $6,527.25 is affirmed. Each party shall bear their own costs for this appeal.

EVANS, C. J., and GREEN, J., concur.

