[No. 5978-9-II.   Division Two.   June 13, 1984.]

DAVID E. BINGAMAN, as *Personal Representative, Respondent,* v. GRAYS HARBOR COMMUNITY HOSPITAL, ET AL, *Appellants.*

*Michael A. Patterson* and *Phillip J. French,* for appellants.

*William F. Nelson* and *David Skellenger,* for respondent.

REED, J.—In this wrongful death and survival action the jury assessed damages of $1,002,089.03 against Grays Harbor Community Hospital and Dr. Samuel F. Nebel, in favor of David E. Bingaman as personal representative of the estate of Deborah M. Bingaman, deceased. When their post–trial motions for remittitur or in the alternative a new trial were denied, the Hospital and Nebel jointly pursued this appeal, raising issues as to damages only. We reverse and remand for a new trial, limited to the issue of damages for pain and suffering, unless the personal representative consents to a reduction of $206,000 from the damages awarded on the survival claim.

Deborah M. Bingaman died at the age of 26 as the result of medical malpractice. She was admitted to Grays Harbor Community Hospital on October 25, 1978 for the birth of her second child. She had been followed during her pregnancy by Dr. Samuel F. Nebel. Her delivery of Adam Bingaman about 5 hours after admission was uneventful. However, complications developed from an undiagnosed,

preexisting condition of her pregnancy. Dr. C. E. Ward and Dr. Lester A. Reid were called in at the hospital. Deborah Bingaman died during the night of October 26, 1978. Death was caused by the progression of preeclampsia or toxemia of pregnancy to eclampsia and disseminated intravascular coagulation, which resulted in uncontrolled bleeding into the brain. Both Dr. Nebel and the hospital nurses failed to note the obvious warning signs of preeclampsia and consequently failed to take well known preventive action. Deborah Bingaman was survived by her husband, David E. Bingaman, and their sons Joel and Adam, ages 2½ years and 2 days, respectively, at their mother's death.

David E. Bingaman, as personal representative, brought this wrongful death and survival action pursuant to RCW 4.20.010–.020 and RCW 4.20.060 seeking damages from Grays Harbor Community Hospital, Drs. Nebel, Ward, and Reid. At the close of all the evidence in the lengthy trial, the court directed a verdict against Nebel. The jury returned a verdict finding the Hospital liable as well, but exonerating Ward and Reid. Pursuant to the verdict form, the jury fixed damages separately on the wrongful death claim for David Bingaman, Joel Bingaman, and Adam Bingaman and on the survival claim for the estate of Deborah Bingaman. The jury awarded David Bingaman $293,000; Joel Bingaman $146,500; Adam Bingaman $146,500; and the estate $416,089.03. The total is $1,002,089.03. The post–trial motions brought by the Hospital and Nebel for a remittitur of $400,000 of the survival claim award or in the alternative a new trial were denied. They appeal damages only.

Before addressing the Hospital and Nebel's most potent claim—the excessiveness of the survival action damages—we will dispose of their lesser claims.

■ The Hospital alone claims that the trial court erred by denying its motion for a new trial on the basis of jury misconduct. The Hospital presented affidavits of three jurors stating that in fixing the survival action damages they considered Mrs. Bingaman's loss of life and loss of

ability to enjoy life. They were not instructed to do so. Affidavits which probe a juror's mental process to determine what specific items the juror considered in arriving at the verdict may not be considered. *Russell v. Grandview,* 39 Wn.2d 551, 236 P.2d 1061 (1951); *Hendrickson v. Konopaski,* 14 Wn. App. 390, 541 P.2d 1001 (1975). The subject of the affidavits presented by the Hospital inheres in the verdict. The new trial motion was properly denied on this basis.

The Hospital claims that the court erred by refusing to instruct that damages to the estate on the survival claim include net accumulations as well as pain and suffering and medical expenses. The Hospital argues that because the instruction did not cover this element of damages, the jury was allowed to include the same economic loss in the survival damages as in the wrongful death damages, thus giving an impermissible double recovery. Net accumulations is the portion of a decedent's future income recoverable on a survival claim. *Wagner v. Flightcraft, Inc.,* 31 Wn. App. 558, 643 P.2d 906 (1982); *see Criscuola v. Andrews,* 82 Wn.2d 68, 507 P.2d 149 (1973); Martin, *Measuring Damages in Survival Actions for Tortious Death,* 47 Wash. L. Rev. 609 (1972). It is computed by determining the probable gross earnings of a decedent, subtracting personal and family support expenditures, and then reducing the figure to present value. *Wagner v. Flightcraft, Inc.,* 31 Wn. App. at 568. The family support expenditures, deducted in computing net accumulations, are recoverable on the wrongful death claim. Separation of the economic loss is important when the beneficiaries of the survival and wrongful death actions are different.

The jury instruction on survival action damages in this case was technically incorrect. However, no prejudice resulted to the Hospital. The wrongful death damage instruction told the jury to award all pecuniary loss to David, Joel and Adam Bingaman. The survival claim instruction covering the award to the estate contained no element of pecuniary loss. There was no possibility of dou-

ble recovery under these jury instructions. The Hospital is not harmed by having to pay to the wrongful death beneficiaries what it should pay under the law to the survival claim beneficiaries.[1]

Nebel joins the Hospital in claiming that it was error to submit a verdict form to the jury which required it to fix damages in separate amounts for David Bingaman, Joel Bingaman, Adam Bingaman and the estate.[2] This, too, they argue, made it possible for the jury to give a double recovery. The exception below to the form of the verdict was not taken on this basis. It is the law of the case. *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 587 P.2d 160 (1978); *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969).

Next, the Hospital and Nebel[3] claim that it was error to refuse an instruction on the impact of federal income tax. The proposed instruction states that any damages awarded would not be subject to federal income tax. They rely on *Norfolk & W. Ry. v. Liepelt,* 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755 (1980), which holds that in an action based on the federal Employers' Liability Act it is reversible error to refuse an instruction on the impact of federal income tax. The Court, however, stated expressly that it was applying federal law. *Norfolk,* 444 U.S. at 492–93. Although we believe that giving the instruction can do no harm, we refuse to hold that failure to give the instruction is reversible error. *See Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972); *Boeke v. International*

---

[1]Of course, creditors of the decedent conceivably could complain where estate resources are thus reduced. However, defendants cannot assert this *jus tertii. See* J. Stein, *Damages and Recovery—Personal Injury and Death Actions* § 262 (1972).

[2]For a general discussion of apportioning damages among beneficiaries, whether or not provided for by statute such as the original Lord Campbell's Act, 9 & 10 Vict., ch. 93 (1846), *see* J. Stein § 269.

[3]Nebel has not preserved this claim of error because he did not except to the failure to give the jury instruction proposed. *See Samuelson v. Freeman, supra.*

*Paint Co. (Cal.)*, 27 Wn. App. 611, 620 P.2d 103 (1980).

We turn now to the Hospital and Nebel's multifaceted attack on the damages awarded on the survival claim.

The Hospital and Nebel first claim that a decedent's pain and suffering are not recoverable under RCW 4.20.060. This precise issue has been decided recently in *Walton v. Absher Constr. Co.*, 101 Wn.2d 238, 676 P.2d 1002 (1984). The *Walton* court holds that a decedent's pain and suffering are recoverable elements of damages under RCW 4.20.060, the death–by–personal–injury survival statute, in spite of language in RCW 4.20.046, the later enacted general survival statute, expressly excluding recovery for pain and suffering.[4] Deborah Bingaman's pain and suffering was, therefore, a recoverable element of damages, and the jury was properly instructed.

The Hospital and Nebel next attack the excessiveness of the amount awarded for pain and suffering. The precise amount can be determined by simple subtraction. Pain and suffering was one of only two elements of damages covered in the survival action damage instruction. The total award on this claim is $416,089.03. $4,089.03 represents the medical expenses, the other element instructed upon. This leaves $412,000 for pain and suffering. The Hospital and Nebel argue that the award of $412,000 for pain and suffering (1) is not supported by the evidence, (2) is so excessive that it must have been induced by passion or prejudice, and (3) is so excessive that, even in the absence of an incident arousing passion or prejudice, it must shock the conscience of this court.[5]

---

[4]In light of this recent holding which affirms the recoverability of pain and suffering damages, we do not address the Hospital and Nebel's policy argument that all recovery for pain and suffering should be judicially abolished.

[5]Preliminarily, the personal representative argues that in analyzing the excessiveness of the verdict we should be limited to considering the total one million dollar verdict in light of all elements of damages. His authorities are CR 59 and RCW 4.76.030 which authorize the trial court to grant a motion for new trial on the basis that "damages" were excessive. We do not believe either the rule or statute requires us to focus only on the total verdict.

■ We cannot disturb an award of damages made by a jury unless the award is outside the range of substantial evidence, appears to have been arrived at by passion or prejudice, or is so excessive that it shocks our conscience. *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 554 P.2d 1041 (1976). The evidence shows that Deborah Bingaman first complained of pain after dinner on October 25. In the late evening she was complaining bitterly of pain all over. Her roommate testified that Mrs. Bingaman appeared to be in extreme pain and banged the bedrails crying "I'm dying. I know I'm dying. Why can't they help me?" Mrs. Bingaman suffered three grand mal seizures about an hour and a half apart during the early morning hours of October 26. As the day of October 26 progressed her condition appeared to worsen. She told the nurse that she felt awful, was nauseated, had a a headache, and hurt all over her body. By early evening she would only sigh or moan. She was transported to the University of Washington Hospital where she arrived in an unresponsive, "stuporous" condition. She died during the night of October 26, approximately 30 hours after her ordeal began. The evidence also shows that during some of this time she was not conscious because of medication or her physical condition.

Pain and suffering is not readily susceptible to valuation in dollars. The jury was told that it could consider mental as well as physical suffering. If Mrs. Bingaman did, in fact, realize that she was dying as her outcry would indicate, her mental anguish at leaving a good marriage, a new baby and a toddler must have been extreme in light of the evidence that she was a devoted wife and mother. We cannot say that this award was made without substantial evidence.

We also do not believe that the one incident the Hospital and Nebel point to unmistakably indicates that the award was inflated by passion or prejudice. The incident was the court appearance of Joel and Adam Bingaman, then ages 5 and 3. The jury was certainly entitled to see the boys as beneficiaries of the action. Although the procedure employed in bringing them before the jury may have been

unusual,[6] we defer to the firsthand observation of the trial judge who found the incident insufficient to arouse passion or prejudice. The trial judge did not abuse his discretion in denying a new trial or remittitur on this basis.

The troublesome question is whether the trial court abused its discretion by refusing to reduce the pain and suffering award because it was excessive even in the absence of an incident arousing passion or prejudice. When there is no improper occurrence which can be pointed to as having aroused passion or prejudice, the test for excessiveness is whether the amount is so great that it shocks the court's sense of justice and sound judgment. *Kramer v. Portland–Seattle Auto Freight, Inc.,* 43 Wn.2d 386, 261 P.2d 692 (1953); *Wagner v. Flightcraft, Inc., supra.*

> When the amount awarded exceeds rational bounds to the extent that the award could only have been reached by a jury that had forsaken sensible thought and reached its verdict out of outrage, animosity or spite, it is then, and only then, that a court should interfere with a jury verdict because of its size.

*Ryan v. Westgard,* 12 Wn. App. 500, 513, 530 P.2d 687 (1975). We are convinced that the damages awarded in this case for pain and suffering are an unrealistic, irrational appraisal of damages sustained. The jury must have taken out its wrath on defendants for causing, needlessly, the untimely death of a lovely young woman.

The extreme size of the pain and suffering award must have been induced in part by the grossness of defendants' negligence. The warning signs of preeclampsia are well known and can be easily observed and tested. In fact, routine urinalysis tests are usually performed on pregnant women to detect the incipient disease. None was done at a crucial time on Deborah Bingaman. The treatment for preeclampsia is known and effective. Dr. Nebel himself admitted to the jury that Deborah Bingaman's life could have

---

[6]Apparently, the boys came to court only once. They entered the courtroom while their father was testifying and ran to sit on his knees. They were then each asked three or four simple questions.

been saved with proper treatment.

Another aspect of this case no doubt contributing to the size of the award was the quality of the life wasted by defendants' culpable inaction. Deborah Bingaman was a good wife and mother, close to all her family and valued as a friend. College educated as a teacher, she was working with speech and hearing disorders in children. The picture painted for the jury was of a life full of personal potential and enrichment to others. At 26, her death was needless and untimely.

A third factor contributing to the size of this award was the jury's apparent failure to distinguish conscious suffering from periods of unconsciousness. Recovery must be for conscious pain and suffering. *Addison v. Travelers Ins. Co.*, 281 So. 2d 805 (La. Ct. App. 1973); *Allicia v. Boston, R.B. & L. R.R.*, 294 Mass. 488, 2 N.E.2d 457 (1936); *Blunt v. Zinni*, 32 A.D.2d 882, 302 N.Y.S.2d 504 (1969); *see* S. Speiser, *Recovery for Wrongful Death* § 14:10, at 435 (2d ed. 1975) and cases cited therein. *See also* J. Stein, *Damages and Recovery—Personal Injury and Death Actions* § 269 (1972). Although not delineated precisely in the testimony, Deborah Bingaman was unconscious for substantial periods as the disease progressed. She was asleep part of the time, received pain medication and was sedated. When she was transferred to Seattle, about 24 hours after the symptoms began, she was described as unresponsive and in a stuporous condition. The ordinary meaning of "stupor" is "a physical or mental condition characterized by great diminution or suspension of sense or feeling". *Webster's Third New International Dictionary* 2270 (1969). In short, $412,000 was awarded for a period of sporadic suffering lasting less than 1 day.

This court has the power to reduce the pain and suffering award or order a new trial. *Hogenson v. Service Armament Co.*, 77 Wn.2d 209, 461 P.2d 311 (1969); *Kramer v. Portland–Seattle Auto Freight, Inc., supra; see Stanard v. Bolin*, 88 Wn.2d 614, 621, 565 P.2d 94 (1977).

We reverse that portion of the judgment awarding dam-

ages for pain and suffering and remand for a new trial limited to this element of damages unless the personal representative consents to a reduction of $206,000 from the amount of the judgment.[7]

PETRICH, C.J., and PETERSON, J. Pro Tem., concur.

Review granted by Supreme Court September 20, 1984.

---

[7]Because no argument is addressed to the amount awarded on the survival claim for medical expenses, we see no reason to require the personal representative to prove these damages again. Also, because net accumulations have already been recovered under the wrongful death claim without harm to the Hospital (or Nebel), the new trial, if elected, should not include this element of damages.