KATHLEEN WATSON, A MINOR, BY AND THROUGH HER FATHER AND
NEXT FRIEND, GERALD WATSON, APPELLANT, V. LEE F.
MCNAMARA, M.D., APPELLEE.

424 N.W.2d 611

Filed June 24, 1988.   No. 86-151.

Joseph B. Muller and Ronald J. Palagi for appellant.

William M. Lamson, Jr., and Patricia A. Zieg, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

This is a medical malpractice action against the defendant, Lee F. McNamara, M.D. The plaintiff, Kathleen Watson, was born October 4, 1979, by cesarean section, from a breech position. In her fourth amended petition the plaintiff claimed severe and permanent injuries and asked for damages including assigned medical and hospital costs. There was conflicting expert testimony which estimated gestational age from a low of 33 weeks to a high of 35 weeks, a term pregnancy being approximately 40 weeks. At trial, the plaintiff alleged, inter

alia, that McNamara was negligent in failing to determine the fetal age, resulting in the premature birth of the plaintiff. The jury found for the defendant, and the plaintiff appeals.

In this appeal the plaintiff argues the following: (1) Certain jury instructions were erroneous; (2) discussion of the liability insurance "crisis" by the jury was prejudicial; (3) defendant's attorneys abused the discovery process; and (4) the verdict is not supported by the evidence, and plaintiff was entitled to a directed verdict or judgment notwithstanding the verdict.

Plaintiff asserts instruction No. 10 was prejudicially erroneous. We agree, and reverse. Instruction No. 10 states:

> An Obstetrician-Gynecologist is not bound to use any particular method of diagnosis or treatment, and if, among Obstetrician-Gynecologists of ordinary skill and learning, more than one method of diagnosis or treatment is recognized as proper, it is not negligence for an Obstetrician-Gynecologist to adopt any of such methods. The fact that some other method of diagnosis or treatment existed, or the fact that some other specialist testified in this case that he might or would have used or advised another of a different method, does not, standing alone, establish that the defendant made or gave improper diagnosis or treatment; nor would it be an act of negligence or impropriety for the defendant not to have adopted another method.

The plaintiff's evidence of negligence was concentrated on the testimony of physicians that the defendant failed to use various methods of determining fetal age that were available to him and that such failure, given the exigencies of his patient's situation, constituted a breach of the standard of care. These physicians further testified that the defendant performed a nonemergency cesarean section in contravention of the standard of care. If believed, this testimony certainly established a prima facie case of negligence for the plaintiff.

Certainly a physician is not liable for malpractice in choosing one of two or more recognized methods of diagnosis or treatment, so long as the method chosen conforms with the standard of care. We believe, however, that instruction No. 10 permitted the jury to infer that the plaintiff's experts'

testimony, even if believed, did not establish negligence and was not enough to establish the plaintiff's case. The giving of instruction No. 10 was prejudicial to the plaintiff and grounds for reversal.

The use of this type of instruction on these or similar facts was directly considered and rejected in *Greenberg v. Bishop Clarkson Memorial Hospital*, 201 Neb. 215, 266 N.W.2d 902 (1978). We see no reason to deviate from that decision.

Plaintiff also contends instructions Nos. 8, 9, 10, 11, 12, and 13, regarding the standard of care applicable to physicians, unduly emphasized the limitations on the physician's liability and misled the jury. After the standard of care was given in instruction No. 7, it was repeated in one form or another in the instructions that followed, no less than five times. These instructions also recited an exhaustive litany of physician immunities. We have said that it is not reversible error for the trial court to repeat a proposition of law in the instructions in proper connection with facts or other principles involved or if it does not appear that the effect was to confuse or mislead the jury. *Kaspar v. Schack*, 195 Neb. 215, 237 N.W.2d 414 (1976). It is also true that each of these instructions, save No. 10, standing alone, correctly stated the law. *Id.* These maxims notwithstanding, we believe that the applicable standard is that where instructions, considered in toto, so repetitiously cover a point of law or its application as to grossly overstate its effect on one side to the explicit detriment of the other side, it is error. *Samuelson v. Freeman*, 75 Wash. 2d 894, 454 P.2d 406 (1969). In the instant case, it may well be doubted whether it was necessary to give such extensive instruction in order to properly apprise the jury of the standard of care applicable to physicians. Because it is unlikely that such instructions will be used again on retrial, we decline to consider whether they so overemphasized the defendant's case as to deny the plaintiff a fair trial.

Similarly, it is unnecessary to consider the plaintiff's second and third assignments, as any such conduct is unlikely to be repeated. As to the last assignment of error, the record discloses a sharp dispute of fact, and, therefore, refusal to grant a directed verdict of liability was proper. The judgment is

4

reversed and the cause remanded for new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

SHANAHAN, J., not participating.