IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ESTATE OF MARGARET ANNE DAVIS; MEGAN DAVIS, individually, | No. 83980-2-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| UNIVERSITY OF WASHINGTON MEDICAL CENTER, a/k/a UW MEDICAL CENTER; UW SCHOOL OF MEDICINE; UW MEDICINE, | |
| Respondents. | |

HAZELRIGG, A.C.J. — The Estate of Margaret Anne Davis and Megan Davis, individually and as personal representative of the estate, appeal the trial court's order on summary judgment that dismissed claims of medical malpractice, corporate negligence, outrage, and wrongful death against the University of Washington Medical Center. Because the complaint was not filed within the three-year statute of limitations provided in RCW 4.16.350 and no applicable tolling provision was invoked, dismissal was proper. Accordingly, we affirm.

FACTS

On December 13, 2017, Margaret Anne Davis[1] was taken by ambulance to the emergency room at the University of Washington Medical Center (UWMC)

___

[1] Because the decedent and her daughter, Megan, share the same last name and Megan brought the suit on behalf of her mother's estate and individually in her capacity as personal representative, we use first names as needed for clarity.

where she was admitted with hypoxia and hypotension, along with a number of other medical concerns. Anne was 96 years old and had multiple health issues, including advanced dementia. During her hospitalization, Anne was unable to safely swallow and, as a result, could neither eat nor drink on her own. Though her family requested that hospital staff in the intensive care unit use a feeding tube to sustain Anne, the providers determined that she was too weak for such treatment and that end of life care was more appropriate. Instead, Anne was transitioned to comfort care, and, on December 23, 2017, she was discharged from UWMC after much disagreement between the family and medical providers about her treatment plan. Anne's family sought a referral to Evergreen Home Health (EHH) and requested that her records be transferred there in order to facilitate an appointment with a gerontologist.

On December 28, 2017, after five days at home, during which Anne remained unable to eat or drink, her daughters took her to the emergency department at Northwest Hospital where they again requested artificial nutrition for her. Medical providers at Northwest Hospital explained that artificial nutrition was not warranted under the circumstances and would be without benefit as "end-stage dementia [was] the underlying etiology." The providers recommended palliative care for Anne, and explained to her daughters that home care, with comfort as the goal, was the most reasonable option. However, the daughters disagreed with the treatment providers and insisted that their mother be discharged as soon as

---

Further, the record establishes that Margaret preferred to use her middle name, Anne. No disrespect is intended.

possible so they could take her to a naturopathic clinic. Anne was discharged from Northwest Hospital on December 29, 2017.

Anne was readmitted to Northwest Hospital on January 1, 2018, and she ultimately passed away there on January 3, 2018. The causes of death listed on her death certificate were acute respiratory failure (interval of 2 hours), severe protein calorie malnutrition (interval of months), advanced dementia (interval of years). A number of other conditions contributing to her death were also noted.

On December 30, 2020, the Estate of Margaret Anne Davis and Megan Davis,[2] as personal representative, (collectively Davis) sent UWMC a written request for mediation pursuant to RCW 7.70.110. The letter provided that the request was "regarding inexplicably wrongful care at the University of Washington Medical Center (UWMC) in December 2017, which led to [Anne's] premature death in January 2018." On December 22, 2021, Davis filed suit against UWMC[3] and alleged, among other things, that it had provided negligent medical treatment to Anne which resulted in her death. The purported acts of medical negligence set out in the complaint all occurred between December 13 and December 23, 2017, the period in which Anne was admitted and receiving treatment at UWMC.

On March 4, 2022, UWMC filed a motion for summary judgment which sought dismissal of Davis' lawsuit with prejudice based on the statute of limitations. As RCW 4.16.350 requires wrongful death actions premised on medical negligence be filed within three years of the alleged negligent act or omission,

---

[2] Anne's daughter, Megan, was assigned all claims on behalf of the Estate against UWMC.
[3] The suit named the UWMC, UW School of Medicine, and UW Medicine as defendants, but the trial court noted in its order granting summary judgment that the latter two entities were not proper defendants as neither provides healthcare nor employs healthcare providers.

UWMC argued this suit was barred because it was filed more than three years after Anne was discharged from UWMC on December 23, 2017. UWMC acknowledged that RCW 7.70.110 allows the three-year filing period to be tolled by an additional year, but asserted Davis' December 30, 2020 request for mediation did not toll the statute of limitations because it was also sent over three years after Anne's discharge from UWMC. On April 1, 2022, the trial court conducted a hearing on UWMC's motion for summary judgment, at the conclusion of which it granted the motion and dismissed Davis' action.

Davis timely appealed.

ANALYSIS

Davis contends the trial court failed to follow the proper legal standards of "review and proof" when deciding UWMC's motion for summary judgment. According to Davis, UWMC failed to meet its initial burden of showing that her claims were barred by the statute of limitations, and therefore, the burden should not have shifted to her. We disagree.

This court reviews summary judgment orders de novo and engages in the same inquiry as the trial court. Gunnier v. Yakima Heart Ctr., Inc., 134 Wn.2d 854, 858, 953 P.2d 1162 (1998). "A motion for summary judgment based on a statute of limitations should be granted only when the pleadings, depositions, interrogatories, admissions, and affidavits in the record demonstrate there is no genuine issue of material fact as to when the statutory period commenced." Kim v. Lee, 174 Wn. App. 319, 323, 300 P.3d 431 (2013). A material fact is one on which "the outcome of the litigation depends." Jacobsen v. State, 89 Wn.2d 104,

108, 569 P.2d 1152 (1977). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." Reynolds v. Hicks, 134 Wn.2d 491, 495, 951 P.2d 761 (1998).

"Summary judgment is subject to a burden-shifting scheme." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The party moving for summary judgment bears the initial burden of showing the absence of any issue of material fact. Walston v. Boeing Co., 181 Wn.2d 391, 395, 334 P.3d 519 (2014). Defendants can meet this burden in one of two ways; they can set out their version of the facts by submitting affidavits and other evidence, or, they can simply point out to the trial court that insufficient evidence supports the nonmoving party's case. Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 21-22, 851 P.2d 689 (1993). Those pursuing the latter avenue need not submit affidavits in support of their motion, but they must identify the portions of the record, as well as any affidavits submitted by the nonmoving party, that demonstrate a lack of genuine dispute as to any material fact. Id. at 22. Once the moving party does so, the burden shifts to the party who must carry the burden of proof at trial. C.L. v. Dep't of Soc. & Health Servs., 200 Wn. App. 189, 204, 402 P.3d 346 (2017). "The statute of limitations is an affirmative defense on which the defendant bears the burden of proof." Kim, 174 Wn. App. at 323. However, when a plaintiff asserts an exception to the statute of limitations, the plaintiff must prove that it applies. Cortez-Kloehn v. Morrison, 162 Wn. App. 166, 172, 252 P.3d 909 (2011).

The nonmoving party, here Davis, must then "set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986). The nonmoving party cannot rely on speculation, argumentative assertions, or on affidavits considered at face value. Id. Affidavits submitted in opposition to summary judgment must be based on personal knowledge, provide facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify on the matters addressed therein. CR 56(e). "Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment." Guile, 70 Wn. App. at 25. Even an expert opinion that is conclusory or based on assumptions will fail to preclude summary judgment. Lilly v. Lynch, 88 Wn. App. 306, 320, 945 P.2d 727 (1997).

If the nonmoving party fails to establish the existence of any essential element of their case, summary judgment is proper. Kendall v. Douglas, Grant, Lincoln, & Okanogan Countys Pub. Hosp. Dist. No. 6, 118 Wn.2d 1, 9, 820 P.2d 497 (1991). We may affirm summary judgment "on any grounds supported by the record." Blue Diamond Grp., Inc. v. KB Seattle 1, Inc., 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

I.      Medical Negligence Statute of Limitations

Davis assigns error to the trial court's determination that UWMC met its burden of proof at summary judgment by raising the statute of limitations as an affirmative defense.

- 6 -

"The purpose of statutes of limitations is to shield defendants and the judicial system from stale claims." Burns v. McClinton, 135 Wn. App. 285, 293, 143 P.3d 630 (2006). Generally, a statute of limitations is not triggered until a cause of action has accrued, that is, "when a party has a right to apply to a court for relief." Malnar v. Carlson, 128 Wn.2d 521, 529, 910 P.2d 455 (1996).

RCW 4.16.350 governs the statute of limitations for claims of medical negligence and wrongful death resulting from such negligence. Fast v. Kennewick Pub. Hosp. Dist., 187 Wn.2d 27, 29, 384 P.3d 232 (2016). The statute provides that a cause of action

> based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his or her representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later.

RCW 4.16.350(3). "The three-year limitations period in RCW 4.16.350(3) begins to run from the date of the act or omission alleged to have caused injury." Gunnier, 134 Wn.2d at 864. Accordingly, plaintiffs must file such claims "within three years of the allegedly negligent act or omission or within one year of when the negligence is or should have been discovered, whichever is later." Fast, 187 Wn.2d at 29.

A. Tolling Provision

RCW 7.70.110 provides a tolling exception to the three-year limitation period of RCW 4.16.350. Pursuant to this provision, a party may toll the statute of limitations for one year by making a "written, good faith request for mediation." RCW 7.70.110. Though a mediation request sent within the three-year window

will trigger the tolling provision, "it will not revive a period that has already expired because there would be nothing to toll." Cortez-Kloehn, 162 Wn. App. at 171.

Anne was admitted to UWMC on December 13, 2017, and discharged on December 23, 2017. In the complaint, Davis set out seven separate allegations of negligent treatment pursuant to RCW 7.70.040; all of the purported negligent acts or omissions by UWMC providers occurred within the 10-day period that she was admitted at that facility. If the last alleged negligent act or omission occurred on December 23, 2017, Davis had three years from that date to either file the wrongful death action pursuant to RCW 4.16.350, or send a mediation request to UWMC pursuant to RCW 7.70.110. Fast, 187 Wn.2d at 29; Cortez-Kloehn, 162 Wn. App. at 171. Davis elected to send a mediation request pursuant to RCW 7.70.110 in order to toll the statute of limitations by an additional year. However, that request not sent until December 30, 2020, which was not within three years of December 23, 2017.[4] Accordingly, if we determine, consistent with her complaint, that the last alleged negligent act or omission of UWMC occurred on December 23, 2017, then Davis' claims are barred by the statute of limitations because she failed to invoke the tolling provision under RCW 7.70.110, as the "written, good faith request for mediation" was not sent until December 30, 2020. At that point, under Cortez-Kloehn, there was "nothing to toll." 162 Wn. App. at 171. Davis did not file the

---

[4] For the first time on appeal, Davis argues that RCW 4.16.190 tolled the statute of limitations until Anne's death on January 3, 2018, because she was disabled during the relevant period preceding her death as a result of her dementia. In addition to failing to comply with RAP 2.5, this argument is unpersuasive as the decedent in a wrongful death action is not the "person entitled to bring the action" pursuant to RCW 4.16.190(1). Rather, "only the personal representative can bring the action" and, therefore, only the disability of the personal representative will toll the statute of limitations. Huntington v. Samaritan Hosp., 101 Wn.2d 466, 469, 680 P.2d 58 (1984).

complaint until December 22, 2021, which was well outside of the three-year requirement of RCW 4.16.350(3).[5]

B. Continuing Medical Negligence

In the complaint, Davis stated that UWMC failed to promptly send Anne's medical records to EHH, which delayed an appointment her daughters made with another doctor; however, nowhere in her pleadings did Davis allege that negligent medical treatment by UWMC occurred after Anne's discharge on December 23, 2017. In response to the motion for summary judgment, Davis asserted for the first time that UWMC's negligent treatment continued until Anne's death on January 3, 2018. UWMC pointed to the lack of evidence that "UWMC providers directed—or even could direct—the care provided at Northwest Hospital by providers who exercised their own clinical judgment." At argument on its motion, UWMC explained that Northwest Hospital is a "separate institution with separate policies and separate providers using their own separate clinical judgment." In its oral ruling, after hearing from both sides on this issue, the court stated, "Northwest Hospital is a different hospital," and explained that there was no "competent evidence to say that negligent treatment continued to occur at Northwest Hospital. And so the allegation here really is that the negligent treatment was at the [UWMC]."

---

[5] Davis expressly assigns error to the trial court's purported finding that the statute of limitations began on December 23, 2017. However, the order granting summary judgment properly does not include any findings of fact or conclusions of law, and is the only order designated in Davis' notice of appeal.

On appeal, Davis again avers that "UWMC's negligence (via its discharge instructions, consultations with Northwest Hospital staff, and/or its failure to provide medical records) continued until at least January 1, 2018 (if not January 5)." At oral argument before this court, Davis confirmed her position that UWMC's discharge instructions directed the subsequent care that Anne received from the providers at EHH and Northwest Hospital.[6] A claim premised on medical negligence must prove the following:

> (a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances; [and]

> (b) Such failure was a proximate cause of the injury complained of.

RCW 7.70.040(1). Our Supreme Court has interpreted these elements as "particularized expressions of the four traditional elements of negligence: duty, breach, proximate cause, and damage or injury." Caughell v. Grp. Health Co-op. of Puget Sound, 124 Wn.2d 217, 233, 876 P.2d 898 (1994).

Although RCW 4.16.350 provides a strict three-year window for the filing of a complaint based on medical negligence, a claim of continuing negligent treatment may allow the plaintiff to recover for alleged negligent acts or omissions that occurred more than three years before filing. See Caughell, 124 Wn.2d 217. However, "[u]nder the modified continuing-course-of-treatment rule, claimants must allege that the last negligent act, not simply the end of treatment itself,

---

[6] Wash. Ct. of Appeals oral argument, Est. of Davis v. Univ. of Wash. Med. Ctr., No. 83980-2-I (Apr. 12, 2023), at 2 min., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023041155/.

occurred within [three] years of filing suit." Id. at 229. To state a claim of continuing negligent treatment, a plaintiff must show "that a series of interrelated negligent acts occurred during the course of treatment" and, "that the series of interrelated negligent acts caused the injury or damages at issue." Id. at 233. A plaintiff who simply alleges a negligent act followed by non-negligent treatment will fail to state a claim of continuing negligent treatment; "[t]he malpractice claimant must prove that the subsequent care was negligent in its own right." Id. at 234.

Davis argues she provided competent evidence in response to UWMC's motion for summary judgment which was sufficient to state a claim for continuing negligent treatment. The evidence Davis submitted was comprised of portions of Anne's medical records and declarations from Megan and Nithiya Nadarajah, Anne's caretaker.

Davis cites two pages of medical records as evidence that purports to show Northwest Hospital "relied on UWMC's discharge instructions to continue withholding nutrition and hydration" from Anne.[7] They show no such thing. The first page of the records, dictated by Dr. Michael Fujimoto of Northwest Hospital, merely provides the history of Anne's illness and references her prior

---

[7] At oral argument, Davis argued that the providers of EHH and Northwest Hospital "had no choice" but to follow the discharge instructions from UWMC and continue to withhold artificial nutrition from Anne. Wash. Ct. of Appeals oral argument, supra, at 21 min., 20 sec.

There is no competent evidence in the record to support this contention. Both Megan and Nadarajah's declarations begin with an assertion that their respective statements are based on personal knowledge. However, Megan fails to explain how she would have come to have firsthand knowledge that "UWMC's decisions at the University of Washington campus followed [Anne] through the course of her treatment at UWMC-Northwest Hospital campus [sic]."

Similarly, Nadarajah's declaration, at one point, simply concludes without explanation that "[Northwest] Hospital followed the directives of UWMC regarding nutrition and hydration (i.e., providing none), until later convinced otherwise after several pleas from the family."

There are no medical records or declarations from Northwest Hospital providers that state they were bound by the care decisions of UWMC or otherwise unable to independently treat Anne. Further, the record does not include any such discharge instructions from UWMC.

hospitalization at UWMC and transition to comfort care.[8]   The second page, dictated by Dr. Jesse Abbot Klafter of Northwest Hospital, explained that Klafter attempted multiple times to engage Anne's daughters in a broader conversation regarding their goals of care, but they refused, and insisted Anne either be given artificial nutrition immediately or be discharged from Northwest Hospital to attend the appointment they had made at the naturopathic clinic.   Klafter expressed concern about providing artificial nutrition without first having a goals of care conversation with Anne's daughters, "as well as [a] desire to discuss the case with providers at the [UWMC] in the setting of larger goals of care conversation."   There is no indication that this desired communication with UWMC ever occurred. Ultimately, as Klafter was not willing to immediately provide artificial nutrition to Anne, she was discharged on December 29, 2017 at her daughters' request.   Far from showing that Northwest Hospital relied on discharge instructions from UWMC to withhold artificial nutrition and hydration, these medical records are bereft of any reference to the instructions from UWMC, much less any indication of deference by Northwest Hospital doctors to such instructions.

Even assuming arguendo that Northwest Hospital did rely on instructions from UWMC regarding Anne's treatment, Davis still fails to state a claim for continuing negligent treatment by UWMC.  To state such a claim, Davis must first show that a "series of interrelated negligent acts occurred during the course of treatment." Caughell, 124 Wn.2d at 233.  To show that any act or omission was

---

[8] Later in another portion of the record created by Fujimoto, he does appear to agree with the ultimate recommendations of UWMC providers, with regard to hospice care, but nowhere in his chart notes does he indicate a reliance on the decisions or discharge instructions of others.

negligent under RCW 7.70.040, Davis must satisfy the particularized elements of duty, breach, proximate cause, and injury. Id. at 232-33. In a claim of medical negligence, in order to establish the standard of care and to prove proximate cause, "expert testimony is generally required." Guile, 70 Wn. App. at 25. Davis provided none.

Davis relies on Nelson v. Murphy to argue that expert testimony was unnecessary here because it is within the layperson's common sense and knowledge that Anne's death resulted from UWMC's denial of artificial nutrition and hydration, and UWMC's alleged delay in the transfer of her medical records postponed essential treatment, risking her life. 42 Wn.2d 737, 258 P.2d 472 (1953). Nelson provided examples of medical malpractice cases in which expert testimony was not required, such as: a plaintiff infected with gonorrhea as a result of a physician using an unsterilized instrument, a doctor leaving a foot-long spring in a patient's uterus, a broken bone attached so improperly "that it was apparent to a layman's eye," and, a doctor leaving a pair of forceps in a patient's abdomen. 42 Wn.2d at 739. In stark contrast to the examples in Nelson, the medical facts surrounding Anne's treatment and death are not "within the general knowledge of laymen" nor are they "apparent to a layman's eye." Id. According to her death certificate, Anne died of acute respiratory failure, severe protein calorie malnutrition, and advanced dementia. Consequently, Nelson is inapposite.

Davis further asserts that Nadarajah was qualified to offer expert testimony concerning the alleged medical negligence of UWMC and rebut the motion for summary judgment. Trial courts have broad discretion in determining whether a

witness is qualified as an expert, and this court will only reverse such a determination based on a manifest abuse of discretion. Harris v. Robert C. Groth, M.D., Inc., 99 Wn.2d 438, 450, 663 P.2d 113 (1983). A manifest abuse of discretion occurs "when no reasonable person would adopt the trial court's position." Unger v. Cauchon, 118 Wn. App. 165, 170, 73 P.3d 1005 (2003).

Nadarajah's medical credentials were provided in her declaration as follows:

> I graduated in 2001 with a medical degree (MBBS—Bachelor of Medicine and Bachelor of Surgery) and practiced medicine for five years in Sri Lanka as a Pulmonary Specialist. I completed my internship in Sri Lanka. I have completed medical rotations at Swedish Hospital and other areas of the United States. I have passed all Board exams in the United States, and I have passed the United States Medical License Exams Part 1, Part 2, and clinical skills. I have been working as a full-time caregiver for over ten years, caring for patients with a variety of illnesses and care needs, including terminal patients on comfort care and hospice.

Though Nadarajah may be qualified as a caregiver, she is not a physician. As our Supreme Court noted in Young v. Key Pharms. Inc., "we have found no cases in which a nonphysician is found competent to testify on a physician's technical medical standard of care in a medical malpractice case. Rather, the cases uniformly hold that a physician's testimony is necessary in such cases to defeat a defendant's motion for summary judgment." 112 Wn.2d 216, 228, 770 P.2d 182 (1989). Accordingly, the trial court did not abuse its discretion in determining that Nadarajah, a nonphysician, was not qualified to offer an expert opinion on the medical standard of care. Further, as Davis' medical negligence claim was not based on negligent acts or omissions that were observable to the layperson's eye, e.g., "amputating the wrong limb or poking a patient in the eye while stitching a

wound on the face," the trial court did not err in determining that Nadarajah was not qualified to offer an opinion on the proximate cause of Anne's death.[9] Id.

Because Davis asserted an exception to the statute of limitations, she bore the burden to establish it through competent evidence. Cortez-Kloehn, 162 Wn. App. at 172. Davis relied on the theory of continuing negligent treatment to show that the mediation request pursuant to RCW 7.70.110 was sent within the three-year limitation of RCW 4.16.350, so she was required to "present some evidence that a negligent act or omission took place within the limitations period." Kim, 174 Wn. App. at 325. A claim of continuing negligent treatment requires that the plaintiff establish the essential elements of medical negligence. Caughell, 124 Wn.2d at 233. However, Davis only pleaded acts occurring between December 13 and 23, 2017, and failed to provide competent evidence establishing the standard of care or to show causation. Summary judgment is proper when the nonmoving party fails to establish the existence of any essential element of their case. Kendall, 118 Wn.2d at 9. Even when viewed in the light most favorable to Davis, the evidence does not demonstrate an issue of material fact as to any alleged negligent act or omission on the part of UWMC that occurred within the statute of limitations.

The same reasoning applies to Davis' claim of corporate negligence. As set out in the complaint, that cause of action was based on UWMC's purported failure to supervise and intervene when the medical providers were "negligent or

---

[9] Again, while both the declarations of Megan and Nadarajah contain broad assertions as to the actions of different Northwest Hospital medical providers and their respective decision-making, neither declarant explains how they came to have personal knowledge of the actions, much less the rationale underlying those treatment decisions.

substandard or unsafe" in their treatment of Anne. Further, Davis claimed that UWMC "owed a duty to promptly facilitate [Anne's] safe transfer" to another facility and to "ensure the coordination of her care and treatment." In briefing and at argument before this court, Davis averred that UWMC's transfer of records to EHH frustrated the family's efforts to see another doctor. However, just like claims of medical negligence against individual providers, claims of corporate negligence against hospitals generally require expert testimony to establish both the standard of care and proximate cause. Douglas v. Freeman, 117 Wn.2d 242, 249, 252, 814 P.2d 1160 (1991). Because Davis offered no expert testimony to establish these elements and raise an issue of material fact, any claim of corporate negligence based on the transfer of Anne's medical records fails.

Accordingly, the trial court did not err in granting summary judgment in favor of UWMC and we affirm.

WE CONCUR:

- 16 -